IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

CARL DOUGLAS,

    Plaintiff,

v.                                                Case No. GJH-16-3650

WESTERN CORRECTIONAL INSTITUTION,
*et al.*,

    Defendants.

## MEMORANDUM OPINION

Pending before the Court is a Motion to Dismiss or, in the Alternative, for Summary Judgment filed by Defendants Western Correctional Institution, Sergeant James E. Krumpach, Sergeant Julie S. Crowe, CO II Bernard C. Booth, Jr., and CO II Mark L. Widmyer.[1] ECF No. 14. Plaintiff was informed by the Court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that failure to file a response in opposition to the Defendants' Motion could result in dismissal of the Complaint. ECF No. 15. Plaintiff has not filed a response. The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Defendants' Motion shall be granted.

### I. BACKGROUND[2]

Plaintiff, a state inmate currently confined at the Maryland Correctional Institution-Jessup ("MCI-J"), filed the instant civil rights complaint on November 4, 2016, alleging that on October 10, 2016, while housed at the Western Correctional Institution ("WCI"), he was attacked by several inmates who ran into his cell and stabbed him repeatedly. ECF No. 1 at 2. He states

---

[1] The Clerk shall amend the docket to reflect the correct names of defendants.
[2] The facts relied on herein are either undisputed or viewed in the light most favorable to the non-movant.

that correctional officers failed to protect him from the attack as no officers were on the tier or standing outside of the tier at the time of the attack. *Id.* at 2. He claims that he "had to go to the intercom" to report that he had been stabbed. ECF No. 1-1 at 3. In his Amended Complaint, Plaintiff explains that James E. Krumpach, Sergeant Julie S. Crowe, CO II Bernard C. Booth, Jr., and CO II Mark L. Widmyer were on duty at the time of the assault. ECF No. 4 at 3. Plaintiff seeks compensatory damages and the restoration of 1380 good conduct credits. *Id.*

The material facts are not in dispute. Record evidence demonstrates that on October 10, 2016, at approximately 11:55 a.m., Plaintiff was stabbed in his cell while coming out to go to the dining hall. ECF No. 14-4 ¶ 2. Plaintiff informed WCI staff that he had been attacked, but stated that he could not identify his assailants. *Id.* He was immediately transported to the medical area for treatment. *Id.*

At the time of the incident, Defendant Widmyer was assigned to Housing Unit #3 (HU 3) as the C-wing tier officer. ECF No. 14-5; ECF No. 14-3 at 92, 97–99. At the time of the assault, Widmyer was in the housing unit lobby. ECF No. 14-5 ¶ 2. Widmyer states that at approximately 11:40 a.m., as the unit was leaving for lunch, he was approached by Plaintiff who informed Widmyer that he had been attacked. ECF No. 14-5 ¶ 3; ECF No. 14-3 at 92, 97–99. Widmyer noticed multiple puncture wounds on Plaintiff's back, hands and face. *Id.* At approximately 2:00 p.m., Defendants Widmyer and Krumpach reviewed the video footage of C-Wing. The video showed inmates Michael May and Michael Jenkins exiting their assigned cell and entering the cell occupied by Plaintiff and Dominic Deschamps. Jenkins and Deschamps exited the cell approximately thirty seconds later and waited for May to exit the cell before leaving the wing. *Id.*

The Internal Investigative Division ("IID") was contacted regarding the incident. ECF No. 14-3. IID investigator Shifflet contacted Sgt. James Hedrick to review the video footage,

confirming Widmyer and Krumpach's observations of the inmate movements and identification of the assailants. *Id* at 13. Upon reviewing the video, Shifflet noted that May appeared to have an item cupped in his hand, and that after the inmates exited the cell Jenkins appeared to hand something to inmate Erik Marshall who was walking off the tier. *Id*. Shifflet further noted that Plaintiff was observed coming out of his cell followed by May and Deschamps, and that Jenkins and May left the tier as Plaintiff put on a long sleeve shirt. Deschamps was observed preventing Plaintiff from leaving the tier. *Id*. It was noted that Plaintiff remained on the tier pacing until staff made contact with him. *Id*. Shifflet further observed that there was a lot of movement on the tier, as all inmates were headed to the dining area. Plaintiff did not summon help as he paced on the tier; eventually, staff observed that blood was saturating his clothing. *Id*. At that time, staff responded and Plaintiff was provided medical treatment. *Id*.

At the time of the assault, Defendant Crowe was assigned to HU 3 as the officer in charge. ECF No. 14-7 ¶ 2. Defendant Booth was assigned to HU 3 and was working inside the housing unit control center at the time of the attack. ECF No. 14-8 ¶ 2.

After the assault, Krumpach placed Plaintiff on administrative segregation pending investigation. ECF No. 14-4 ¶ 3. After reviewing the video footage of the incident, inmates Deschamps, May and Jenkins were identified as the attackers and placed on Plaintiff's enemy list. *Id*. At the time of the assault, Plaintiff had no documented enemies at WCI. *Id*. ¶ 4. Mays, Jenkins and Deschamps had not been identified as affiliates with any security threat group. ECF No. 14-3 at 12. Defendants each state that they had no prior information that May, Jenkins or Deschamps posed a risk of harm to Plaintiff. ECF No. 14-4 ¶ 4; ECF No. 14-5 ¶ 4; ECF No. 14-7 ¶ 3; ECF No. 14-8 ¶ 3. Plaintiff never informed Defendants that he had any enemies or that he

3

was in fear for his life. *Id.* Defendants were not aware of any threat by the assailants prior to the assault. *Id.*

After the assault, Plaintiff was placed on a transfer list and subsequently was transferred to MCI-J. ECF No. 14-4 ¶ 3. Plaintiff will not be housed in general population with his documented enemies. *Id.* Inmates are screened for enemies before they are placed in a cell together; as such Plaintiff will not be housed in a cell with any documented enemies. *Id.*

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'").

Fed. R. Civ. P. 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*

4

*v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### B. Motion for Summary Judgment

Defendants' motion is styled as a Motion to Dismiss, or in the Alternative, for Summary Judgment. If the Court considers materials outside the pleadings, as the Court does here, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is

5

"no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

### A. Eleventh Amendment Immunity

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. *See Nichols v. Md.*

*Correctional Inst. – Jessup*, 186 F. Supp. 2d 575, 580 (D. Md. 2002) (in prisoner protection suit, reasoning that as to state agency, state had not waived Eleventh Amendment immunity). Thus Plaintiff's claims against WCI, a State agency is barred by the Eleventh Amendment.

The Eleventh Amendment also bars claims brought against state employees in their official capacity. *See Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) ("state officers acting in their official capacity are also entitled to Eleventh Amendment protection"); *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) ("a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents"). Therefore, Defendants are immune from suit in federal court for any claims brought against them in their official capacity. The Court grants Defendants' Motion to Dismiss the claims against WCI and all Defendants in their official capacity.

### B. Failure to Protect Claim

Regarding claims brought against Defendants in their individual capacities, in order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Id.* at 837; *see also Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir. 1997).

A failure to protect claim must satisfy an objective and subjective standard. Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk to either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id.* at 837.

Here, Plaintiff has not sufficiently alleged an Eight Amendment failure to protect claim as he has not alleged that the officers were subjectively deliberately indifferent to his health or safety. He alleges only that "[t]here was [sic] know [sic] officers on the tier, in the lobby, or paying attention to the tier." ECF No. 4 at 3. Plaintiff does not allege that Defendants were aware that there was a risk that Plaintiff would be attacked, or that he was at risk of serious harm. As such, the Court grants Defendants' Motion to Dismiss the failure to protect claims.

Even if Plaintiff had sufficiently *alleged* a failure to protect claim, the record is devoid of *evidence* that Defendants were subjectively aware that Plaintiff was subject to an excessive risk

8

of harm, and the Court would grant the Defendants' alternative Motion for Summary Judgment. Nothing suggests that Plaintiff told Defendants that he was likely to be assaulted by May, Jenkins or Deschamps, or that May, Jenkins or Deschamps were out to cause him harm. Moreover, Plaintiff's assailants were not on Plaintiff's known enemy list. The assault appears to have been spontaneous and unexpected. In short, Plaintiff has failed to come forth with any evidence that prison officials were in fact aware of an excessive risk of harm to his safety.[3]

### C. Good Conduct Credits

The basis for Plaintiff's seeking the restoration of good conduct credits is unclear. In a letter contained in the IID report, he indicates that he was pulled from a drug rehabilitation program in 2014 and lost 1380 good conduct credits. ECF No. 14-3 at 115. He states that he was advised that in order to earn the days back he was required to "redo" the program. *Id.* To the extent this is the basis for Plaintiff's request, his claim is subject to dismissal as inmates do not have a constitutional right to participate in in any particular prison program. *See Meachum v. Fano*, 427 U.S. 215 (1976); *Paoli v. Lally*, 812 F.2d 1489 (4th Cir. 1987). It is unclear how the loss of credits is related to the remainder of Plaintiff's claim, as the events contained in his Amended Complaint occurred in 2016, and he alleges having lost the good conduct credits in 2014. At this time, the Court denies Plaintiff's request without prejudice.

### IV. CONCLUSION

For the foregoing reasons Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment, will be granted and judgment will be entered in favor of Defendants and against Plaintiff. A separate Order follows.

1/29/2018
Date

GEORGE J. HAZEL
UNITED STATES DISTRICT JUDGE

---

[3] Having found no constitutional violation, the court need not address Defendants' claims regarding qualified immunity.

9